Your argument this morning. Mr. Bell? Yes. With pleasure. The court, I'd like to reserve three minutes for rebuttal. My name is Rich Bell and I represent myself in this case against Mr. Lantz. After I did an investigation in January 2013, I filed suit against Charles Lantz for copyright infringement for allegedly publishing my copyrighted photograph on his website. I viewed that photograph on his website. Lantz answered the complaint but never told me I named the wrong person. Twenty-two months after I filed suit, Lantz was compelled to answer interrogatories and finally answered for the first time that I filed suit against the wrong person. Based upon that information, I dismissed Mr. Lantz. Lantz then asked the district court to award attorney's fees as a prevailing party. In awarding more than $33,000 in fees, the district court made several errors interpreting law, which this court... May I stop you for a moment, please? Because here's something I've been wondering about. I mean, you know, why wasn't the answer, which denied all allegations of infringement, sufficient to apprise you of the fact that it was not he who published the photo? Because, Your Honor, answers don't really handle that question. They're just denials. And what you have to do then is file interrogatories, which that's what I did, to ask them specifically why he denied them. And that's how I got the answer. When did you serve the interrogatories? I served the interrogatories after the court had their pretrial hearing, which was one year later. Okay? One year after I filed a lawsuit, the pretrial was had. Why the delay in serving those interrogatories? I have no idea, Your Honor. The court... No, I mean, why did you delay? You didn't have to... I couldn't start any discovery. Why not? Without the Rule 28 hearing, as well as... I don't understand that. You can serve discovery requests the day after a lawsuit begins. Not in our district. So our district just cancels the rules of civil procedure? Well, Your Honor... There is also a rule, Rule 83, which says you can't have rules of local procedure inconsistent with the national rules. Well, Your Honor, I can tell you that it's specifically in our rules that you've got to have authority to be able to serve those interrogatories, as well as the point is they... You needed judges' permission to serve interrogatories? And, wait a minute, the interrogatories were objected to. They would not answer them. And I had to go get... Well, that's a separate problem. The question was why the delay in serving interrogatories. And what you're saying is, I think, that the district court has a rule that is blatantly inconsistent with the national rules. Also, Your Honor, they did not comply with Loeffler, and they did not comply with Dubinsky by picking up the phone and telling me I filed a suit against the wrong person. But he denied all allegations of infringement when he filed his answer less than two months after the action was initiated. Your Honor, I've had... Maybe you should have picked up the telephone. I did. I did pick up the telephone and ask him specifically. In fact, the judge, the magistrate judge, asked him at the pretrial whether or not he did, and he ducked the question. The defendant's counsel ducked the question. How did he duck it? He said, Your Honor, he says, I want to find out what evidence Mr. Bell has. That's what he said. You've asserted in your papers that the defendant's attorney, Mr. Lance's attorney, knew as early as March of 2013, within about six weeks of the complaint being filed, that his client did not publish the photo. That's correct. And I didn't see the evidentiary support for that. Was that something he admitted to in deposition? Yes. And that deposition is in the record? Yes, it is. I believe it is. Okay, because the citations in your brief were to your own declaration rather than deposition testimony, as far as I could tell. But you're representing that that question was specifically asked? Oh, it certainly was. And that he acknowledged knowing as early as March of 2013? That's correct. That his client never published the photo? That's correct. It seems to me that the district court simply overlooked other evidence that had been submitted on this motion for Copyright Act fees, in particular the billing records that you obtained in discovery and submitted. That's right. I did not understand that at all. She specifically says that there's no evidentiary support for the claim that the billing rate was $250. That's correct. In fact, if you'll look at A12, which is part of my appendix, that's the evidence. That's the engagement letter. Right. I did find that in the record, the engagement letter. As well as the billing records. Right. My other issue is that the billing records that were sent to Lance and to the insurance company are different than the billing records that were submitted in support of their petition. And the court should have, under the parole evidence rule, denied those with disability of both the testimony of the counsel as well as the billing records. Because they are inconsistent with the engagement letter. Well, and the billing records that were produced in discovery, are these billing records that have the address blacked out? That's correct. Is that right? And so they're going to Lance himself. That's correct. And they all reflected a billing rate of $250 an hour, not 410. Right. And the first time the 410 comes up is in the January 2015 bill after the voluntary dismissal. That's correct. And the district court apparently dismissed that somehow. Yes. Why were these submitted under seal? Well, that's because Mr. Overhauser made a point in that position that they should be put under seal. And the district court agreed to that? No. They lifted it. Okay. In fact, Mr. Overhauser didn't even file a brief on that after I submitted under seal. And I didn't ask for it to be under seal. I just was complying with his wishes, which was that they were confidential. And he said, put those under seal. I did so. And then it was up to him to support that, and he never filed it. But there's no question that they were submitted. They're in the docket. The court just overlooked them. They're 228, docket number 228. Okay. Let me also address one other issue that the court did not follow. Is my time up? You have one minute left. All right. You have one minute in your total left. Oh, okay. I'll wait until I come back. Thank you. Mr. Overhauser. May it please the court. In this case, it is the standard of review that dictates the outcome. And that standard is abuse of discretion. The issue is whether the district. What in the record shows that Lance was ever contractually obliged to pay more than $250 an hour? The engagement letter that is in the record talks about the hour re-rate. It talks about, I think it mentions 375 per hour, and it says that it can typically be adjusted over time. In addition, there were two affidavits of counsel submitted specifying that at the time, my standard hourly growing rate was $410. That's not the question. The question is not whether some other clients paid that rate or whether that was the standard rate, but what was the rate that Lance agreed to pay? Now, one understanding of this record is that under the contracts, Lance was to pay $250 an hour if Bell won and $410 an hour if Lance won, which looks like it's a wager with Bell's money rather than an obligation, rather than putting Lance at risk of paying any more than $250 if he lost the suit. Is that how these documents should be read? No, Your Honor. The district court heard those arguments, considered the evidence, which included the declarations of counsel, and what the district court specifically stated was that Mr. Lance, or that the $250 was submitted to the insurance company until the insurance company's obligation was exhausted, and the district court specifically said that Mr. Lance was obligated to be, that Mr. Lance was personally liable for anything in excess of over $250 per hour or for any hours incurred in excess of what the insurance company would cover. Well, the judge said that Mr. Bell didn't submit to the court any documents produced in discovery that support his position about the rate of $250 an hour, and that's just not true. The district court appears to have overlooked the billing records and the engagement letter, which reflect a billing rate of $250 an hour. The engagement letter that was included in the appendix is not the complete engagement. It has a number of redacted parts, so the entire letter was not before the court and it's not before this court. And, in fact, it has a little box on the second page where it extracts an excerpt of a different letter from the insurance company. I don't think you will find that you really need to get the full engagement letter before this court. There's absolutely no basis for secrecy in this case that I can see. If you want an extra $160 an hour on the basis of secrecy, that seems pretty dubious. Well, with all due respect, Your Honor, two affidavits... With all due respect means roughly, if you weren't a judge, I'd be calling you an idiot. That's not a good way to address a court. Understood. The designated evidence included two affidavits of counsel stating what the hourly rate was, and the court was entitled to determine what a reasonable hourly rate was. The court issued a very... No, the court's job was to determine what the actual hourly rate was, the amount that Lance had agreed to pay. He had not agreed to pay what your highest-paying client had paid. He had agreed to pay what he'd pay. We need to figure out what he had agreed to pay. That's a perfectly straightforward proposition. And what the court said was that Mr. Lance was liable for whatever the insurance company did not pay. It said that, and it was within the court's discretion to make that finding. Mr. Oberhauser, what I'm a bit concerned about is it seems like a waste of judicial resources to allow a defendant to string out a case and, therefore, increase fees when a simple communication early on would have terminated the litigation. If I understand your question, Your Honor, as a defense attorney, clients frequently come to me and say, I didn't do it. My job is to say, fine, but let me wait and see what the plaintiff's evidence is. When my client came to me and said he didn't do it, that's how I answered the complaint. I denied all allegations. That was enough to put Mr. Bell on notice that my client denied the allegations. But, nonetheless, I served discovery on Mr. Bell, and lo and behold, he was not able to provide any evidence that my client had committed infringement. In fact, the court, in its order, specifically concluded, this is in the appendix at page 3, quote, Mr. Bell had no evidence to support his claim against Mr. Lance. The court went on to say the motivation of Mr. Bell in filing this action appears to be an attempt to extract quick, small settlements from many defendants instead of using the judicial process to protect his copyright against legitimate actors. What evidence was before her that would have indicated that he was doing this, that he was using the courts to extract quick, small settlements from many defendants rather than a desire to protect his copyright? He filed a single complaint against 47 separate defendants without there being any common action among those 47 defendants. He has filed multiple suits alleging infringement of the same copyright in the same court. Also, many of those were against multiple defendants. The records of those suits show that he is settling them against individual defendants for very small amounts. The court specifically said in the record at page 4 that filing this action caused an undue waste of the party's and the court's resources, and the court said, quote, that Bell was, quote, filing meritless suits in an attempt to outmaneuver the legal system. The court had sufficient grounds to exercise its judgment and award the full amount of the requested lodestar attorney's fees. Among the evidence before the court was even a fee petition from one of Mr. Bell's sister cases that went through summary judgment, and that one was for $55,000. The court also had before it a survey from the American Intellectual Property Law Association for copyright infringement actions through summary judgment in this geographic area, and it showed that the average attorney's fees through summary judgment was $132,000. I submit it would have been within the court's discretion to award a fee of that magnitude, yet it only awarded just a little under $34,000. With regard to Mr. Bell's argument, I think it's also important to emphasize that the court has taken the most economical approach feasible in this action. The issue here is whether the trial court abused its discretion. It weighed all of the evidence and made its decision.  Is Mr. Bell correct about Judge Pratt's view on interrogatories, et cetera, et cetera? My recollection is that what first of all was before the magistrate, not Judge Pratt, but my recollection is that Mr. Bell did not serve interrogatories within the timeframe of the case management plan, meaning that they were served in time for the responses to be served before the close of discovery. After the close of discovery, he went back to the magistrate and asked for an order that the interrogatory answers be responded to, which I did. The bottom line is that the district court did not abuse its discretion in awarding attorney's fees based on the Lodestar calculation. Why didn't you file an early motion for summary judgment with an affidavit from your client saying he never posted the photo? I think that would be imprudent to serve a summary judgment motion until I get the responses to discovery from Mr. Bell. Well, if you knew from your client that he never posted the photo, why wasn't that enough to proceed to get the case dismissed early? Because I didn't know what evidence Mr. Bell may have been hiding. It was like pointy teeth trying to get discovery responses from him, and I wanted to wait until the close of discovery when I knew that I could not be prejudiced by any further last-minute revelations of evidence from Mr. Bell. Thank you. Thank you, Mr. Oberhauser. Anything further, Mr. Bell? Yes, Your Honor. I'd like to add one other thing that the district court failed to do, and that is comply with the case of Baker-Botz. Baker-Botz provides that it makes clear that absent express statutory authorization, no lawyer is compensated for fee defense litigation. The district court in this case... Spring Court held in commissioner against Gene that under fee-shifting statutes, fees are paid for filing and pursuing fee petitions. I didn't see anything in Baker-Botz that overruled Gene. Do you find anything there? Yeah. In fact, Justice Thomas says... Does Baker-Botz mention Gene? It does not. No. Well, our marching orders are to follow decisions of the Supreme Court unless the justices overrule them. But... It seems to me that Baker-Botz certainly doesn't... I mean, the court in Baker-Botz held that the American rule is supplanted where statute is language that authorizes reasonable fees to a prevailing party, which is precisely the same language as in the Copyright Act. I don't see where Baker-Botz helps you. Anyway... Your Honor, Justice Thomas said in our legal system, no attorneys, regardless of whether they practice in bankruptcy, are entitled to receive fees for fee defense litigation, express statutory authorization. Except under fee-shifting statutes. I think we have your position, Counsel. Okay. Thank you. The case is taken under advisement. Our fourth case...